JEANETTE H. B. HUGHES ET AL. *v.* THE FAIRFIELD
LUMBER AND SUPPLY COMPANY ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued April 10—decided May 23, 1956

*David R. Lessler,* with whom was *Robert N. Hunziker,* for the appellant (defendant Ruth M. Clark).

*Philip Y. Reinhart,* for the appellant (named defendant).

*John Keogh, Jr.,* with whom, on the brief, was *John J. Relihan,* for the appellees (plaintiffs).

O'SULLIVAN, J. The plaintiffs instituted this action against seven defendants to obtain a judgment declaring that the named plaintiff is the owner of certain realty free and clear of attachments standing of record against the right, title and interest which, the defendants claim, the estate of Harry B. Hughes has in the property. The plaintiffs also sought equitable relief. The court, although denying the latter, rendered a declaratory judgment in the plaintiffs' favor, and two of the seven defendants have appealed.

The finding, which is not subject to any correction of advantage to the defendants, relates the following facts: On October 16, 1943, William B. Bradley conveyed by warranty deed a parcel of realty in Westport to Harry B. Hughes and Jeanette B. Hughes, husband and wife, "and to the survivor of them and to the heirs and assigns of such survivor." Hughes died on November 19, 1952. His widow is the executrix under his will. In the case at bar she appears as plaintiff both in that capacity and individually. The defendants are creditors of the deceased. Before his death they attached his interest in the realty.

None of their claims are based on services rendered or materials delivered to the attached realty. No creditor had obtained judgment against Hughes before he died. On December 23, 1952, the Probate Court for the district of Westport, which has jurisdiction over his estate, declared it insolvent.[1]

The first question presented by this appeal is whether the attachment of the interest of a grantee in realty which has been conveyed to him and his wife "and to the survivor of them and to the heirs and assigns of such survivor" is extinguished by his death, or, to express the problem in a different way, whether the surviving wife, upon the death of her husband, acquires the entire fee in the realty free and clear of the lien of an attachment placed, before the husband died, upon his interest under a deed conveying the realty to him and his wife "and to the survivor of them and to the heirs and assigns of such survivor."

In recent years the legal profession has made increasing use of the species of deed employed in the case at bar and commonly called a survivorship deed. Lyman, "Survivorship Deeds," 38 Yale L.J. 605. So extensive had their use become by 1937 that the real estate committee on uniform practice of the State Bar Association drafted a form for such a deed and incorporated it in the various uniform standards subsequently adopted by the association on October 15 of that year. 12 Conn. B.J. 113. Since then, the adopted form has been generally utilized in this

---

[1] Five of the seven defendants had attached the interest of Hughes in the realty shortly before he died and within sixty days before the date when the Probate Court declared his estate insolvent. This declaration dissolved all five attachments. General Statutes § 6936. These five defendants have not joined in the appeal of the other two defendants, whose attachments were made before the beginning of the statutory sixty-day period.

state whenever realty is placed in the name of husband and wife. This type of deed creates an estate sui generis. It sets up in each grantee an interest in the land, provides for the termination of the interest of the grantee first dying, and, upon his or her death, vests the entire fee in the survivor. The effect of the deed is not unlike one which creates a life estate in each grantee with remainder over contingent upon survivorship. No vital end is to be served, therefore, by giving a label to Hughes's interest, such as, for example, that of joint tenancy with an express right of survivorship annexed, or of a tenancy in common with a similar annexed right. For the purposes of this case, it is unnecessary to go further than to hold that, upon the death of Hughes, his interest in the realty ceased to exist. Whatever interest he had, when alive, was extinguished by his death, for such was the inevitable result of the provision for survivorship. See *Zeigler* v. *Bonnell,* 52 Cal. App. 2d 217, 219, 126 P.2d 118; *Spikings* v. *Ellis,* 290 Ill. App. 585, 593, 8 N.E.2d 962; *Eder* v. *Rothamel,* 202 Md. 189, 195, 95 A.2d 860; *Musa* v. *Segelke & Kohlhaus Co.,* 224 Wis. 432, 436, 272 N.W. 657; *Power* v. *Grace,* [1932] Ont. 357, 358, 2 D.L.R. 793. It follows, from what we have said, that any lien against the interest of Hughes arising from attachment lost, upon his death, whatever value it may previously have had.

But, it is urged, survivorship has been repudiated in this state. That is correct, but only to the extent of repudiating it as a necessary incident of a joint tenancy. *Alsop* v. *Russell,* 38 Conn. 99, 102; *Phelps* v. *Jepson,* 1 Root 48, 49. We have never held that a grantor may not make express provision for survivorship, whatever may be the estate to which he wishes to attach it. On the contrary, we have frequently approved the right of a grantor to annex the

provision to a joint tenancy. *State Bank & Trust Co.*
v. *Nolan,* 103 Conn. 308, 317, 130 A. 483; *Mahoney* v.
*Mahoney,* 98 Conn. 525, 531, 120 A. 342; *White* v.
*Smith,* 87 Conn. 663, 676, 89 A. 272; *Allen* v. *Almy,*
87 Conn. 517, 524, 89 A. 205. When the grantor has
properly expressed himself, we have always recog-
nized the right of survivorship, not as an incident of
the estate created, but solely by virtue of the con-
veyance. *Houghton* v. *Brantingham,* 86 Conn. 630,
636, 86 A. 664; see *Hartford-Connecticut Trust Co.* v.
*Gowdy,* 141 Conn. 546, 551, 107 A.2d 409.

Nor do §§ 7095 and 7096 of the General Statutes[2]
preclude the conclusion to which we have come con-
cerning a survivorship deed, so called. The first-
mentioned statute is nothing but a codification of a
well-recognized principle of law concerning the sev-
erance of joint tenancies. 2 Tiffany, Real Property
(3d Ed.) p. 211; 2 American Law of Property, p. 8.
And the latter ambiguous section has been repealed.
General Statutes, Sup. 1955, § 2951d.

The two appellants, herein called the defendants,
filed identical special defenses. Each alleged that
the realty conveyed to Hughes and his wife had a

---

[2] "Sec. 7095. JOINT TENANCY; RELEASE OR CONVEYANCE TO OTHER
JOINT TENANTS. Any interest in real property held in joint tenancy
may be extinguished or conveyed to the remaining party or parties
in interest by deed."

"Sec. 7096. JOINT TENANCY; CONVEYANCE OF INTEREST TO PERSON
OR PERSONS OTHER THAN REMAINING JOINT TENANTS. Any interest in
real property held in joint tenancy, including the incident of survivor-
ship of the grantor, may be conveyed to a person or persons other
than the remaining party or parties in interest by deed, provided
the intention to convey said incident of survivorship of the grantor
is expressly set forth therein. Such survivorship in the first con-
veyance and any subsequent conveyance of the interest held in joint
tenancy with the incident of survivorship shall, however, mean the
survivorship of the original grantor only and not the survivorship
of any subsequent grantors in the chain of conveyances of said
interest."

value in excess of $25,000; that Hughes was a building contractor and, with the acquiescence and knowledge of his wife, secured credit from the defendants by holding himself out as the owner of a half interest to which they, the defendants, might look to satisfy the extended credit; that the plaintiff wife profited by this arrangement in that she was cared for, over the years, by Hughes through moneys obtained by him from various jobs he was able to secure on the basis of his claimed ownership in the realty; and that, either through waiver or estoppel on her part, she cannot in justice or equity maintain that she is the sole owner of the realty, free of the lien of the defendants' attachments.

At the trial, the defendants offered evidence to establish the facts alleged in their special defenses. The court ruled that such evidence was not material to the issues set forth in the complaint and refused to permit the defendants to proceed with proof of the allegations of their special defenses. Estopping Mrs. Hughes from claiming sole ownership of the property will be of no avail to the defendants. The only question presented by the complaint was what, if any, attachable estate Hughes had in the property. The extent of his estate could not be affected by any conduct on the part of his wife short of a conveyance by her to him of some additional estate in the property. When Hughes died, his interest also died. There was nothing to support the lien of an attachment. To hold that the plaintiff wife is estopped or that she has waived some right cannot bring to life something which presently has no existence. The court was correct in excluding the evidence.

The final claim pressed by the defendants is that the court erred in refusing to permit them to file counterclaims six days after all parties had rested.

Considering the nature of the allegations of the counterclaims, we conclude that the court's ruling was sound.

There is no error.

In this opinion the other judges concurred.